Roland L. BARKER and H. Eugene Barker, Defendants-Appellants,

v.

BROWNSBURG LUMBER COMPANY, INC., Plaintiff-Appellee.

No. 1–879A230.

Court of Appeals of Indiana, First District.

Jan. 22, 1980.

John J. Fuhs, Petri & Fuhs, Spencer, for defendants-appellants.

Russell M. Webb, Jr., Palmer, Hinkle, Keck & Webb, Danville, for plaintiff-appellee.

RATLIFF, Judge.

Defendants-appellants Roland L. Barker and H. Eugene Barker appeal the judgment of the trial court foreclosing a mechanic's lien in favor of the plaintiff-appellee Brownsburg Lumber Company, Inc.

The evidence most favorable to the judgment reveals that in May, 1975 Roland Barker and his wife, Gloria, and Eugene Barker and his wife, Sandra, entered into a written contract to sell certain real estate in Hendricks County, Indiana, to Robert A. Barker and Janet S. Barker, husband and wife. This was an installment sale agreement, and no deed was to be delivered until the purchasers' contractual obligations were fully performed. The contract was not recorded.

Robert and Janet took possession of the real estate and moved into the house located there at approximately the same time that they entered into the contract. In late 1975 or in early 1976, the house was partially destroyed by fire. Robert and Janet lived away from the property for about five months. Aside from that absence, they lived in the house continuously from May, 1975 until the filing of this lawsuit. No one else occupied the premises during that period.

After the fire, Robert entered into an oral agreement with David Young of Tri-County Builders to repair the house. Approximately one-fourth of the house had to be rebuilt, and approximately three-fourths had to be repaired. The agreed price for the work was $20,000.00, of which Robert eventually paid $19,000.00. Young did not complete the repair work and failed to pay the Brownsburg Lumber Company for materials it supplied. On April 21, 1977, Brownsburg Lumber timely filed its sworn statement of intention to hold a lien upon the property pursuant to IC 1971, 32–8–3–3 (Burns Code Ed.),[1] but gave no other notice to either the record owners, Roland and Eugene, or to the contract purchasers, Robert and Janet.[2] There was no communication between Robert or Janet and Brownsburg concerning Robert and Janet's interest in the property, nor was any evidence introduced which would indicate that any employee of Brownsburg knew who had contracted with David Young for the repairs.

Brownsburg filed suit in May, 1977 to recover damages from Young and Tri-County Builders and to foreclose the mechanic's lien on the Barker property. The trial court entered default judgments against Young and Tri-County Builders in favor of Brownsburg on its complaint and in favor of Roland and Eugene on their cross-claim. Roland and Eugene unsuccessfully moved for summary judgment against Brownsburg. After Brownsburg tried its case against Roland and Eugene to the court, judgment was entered in favor of Brownsburg foreclosing the mechanic's lien and awarding $3,270.36 in damages and $1,000.00 in attorney's fees.

Roland Barker and Eugene Barker raise the following issues for our consideration on appeal:

1. One must file the statement in the county recorder's office within sixty days after furnishing materials in order to acquire a mechanic's lien upon property.

2. Robert and Janet Barker were not named in recorded statement of intention to hold a mechanic's lien, nor were they made parties to this action.

1. Whether it was contrary to law for the trial court to apply the mechanic's lien statute based upon the uncontradicted evidence presented.

2. Whether Brownsburg was entitled to foreclose the mechanic's lien filed even though the uncontradicted record establishes the five (5) day notice was not given.

3. Whether the findings, conclusions and judgment below are contrary to law because of Brownsburg's failure to comply with the conditions precedent of the mechanic's lien statute.

4. Whether the judgment is contrary to law because it is based upon the trial court's conclusion that Brownsburg ". . . gave proper notice of such lien rights."

5. Whether the trial court erred in denying Roland and Eugene Barker's motion for summary judgment.

6. Whether Brownsburg established the materials in question had been delivered to and used on the property so as to entitle it to judgment.

7. Whether the court erred in finding attorney's fees are recoverable by Brownsburg in this case based upon the uncontradicted record and the language of IC 1971, 32–8–3–14 (Burns Code Ed.).

8. Whether there was *any* evidence to support the award of $1,000.00 as attorney's fees for Brownsburg.

Roland and Eugene have argued Issues One through Five together pursuant to Ind. Rules of Procedure, Appellate Rule 8.3(A)(7), and we will consider those issues in the same manner.

The portion of our mechanic's lien's statute which is relevant to our determination of this case is the third paragraph of IC

1971, 32–8–3–1 (Burns Code Ed.),[3] which provides as follows:

"Any person, firm, partnership or corporation who sells or furnishes on credit any material, labor or machinery for the alteration or repair of any owner-occupied single or double family dwelling or the appurtenances or additions thereto, to any contractor, subcontractor, mechanic or anyone other than the occupying owner or his legal representative shall furnish to the occupying owner of said parcel of land where the material, labor or machinery is delivered, a written notice of the delivery or work and of the existence of lien rights, within five [5] days from the date of first delivery or labor performed. The furnishing of such notice shall be a condition precedent to the right of acquiring a lien upon such lot or parcel of land or the improvement thereon."

Roland and Eugene contend, in essence, that because Brownsburg failed to give them or Robert and Janet the written notice of the existence of lien rights within five (5) days of the sale of the materials to Young, as contemplated by IC 32–8–3–1, it did not acquire a mechanic's lien on the property. Roland and Eugene argue that Robert and Janet, as contract purchasers of the real estate in question, were owner-occupants of the property and were entitled to the five (5) day notice. Brownsburg asserts that there was no owner-occupant in this case.

Our Supreme Court, in *Mid America Homes, Inc. v. Horn*, (1979) Ind., 396 N.E.2d 879, recently considered the term "owner" as it is used in another part of IC 32–8–3–1.[4]

**3.** This section was amended in 1977 to increase the time limit from five (5) days to thirty (30) days. For the current provision, effective August 29, 1977, *see* IC 1971, 32–8–3–1 (Burns Code Ed., Supp.1979). The five (5) day limit was in effect at all times pertinent to this action.

**4.** The fourth paragraph of IC 32–8–3–1 provides as follows:

"Any person, firm, partnership or corporation who sells or furnishes on credit any mate-
rial, labor or machinery, for the original construction of a single or double family dwelling for the intended occupancy of the owner upon whose real estate the construction takes place to any contractor, subcontractor, mechanic or anyone other than the owner or his legal representatives shall furnish said owner a written notice of the delivery or labor and the existence of lien rights within fourteen [14] days from the date of the first delivery or labor performed. The furnishing of such notice shall be a condi-

There the purchasers under an oral contract for the sale of land contracted with a builder to have a new single family dwelling erected on the property. The builder ordered certain materials from the supplier. The invoice from the supplier bore the name of one of the contract purchasers. Nonetheless, the supplier submitted its written notice pursuant to IC 32–8–3–1 to the record title holders. After the record title holders received the notice, they informed the supplier that subsequent to the date of the notice the contract purchasers had become record title holders. The supplier made no effort to notify the purchasers. The supplier later sued unsuccessfully to foreclose the mechanic's lien. The Court of Appeals reversed and instructed the trial court to enter judgment for the supplier. 377 N.E.2d 657 (1978). The Supreme Court granted transfer and vacated the decision and opinion of the Court of Appeals.

The Supreme Court in *Mid America Homes, supra,* determined that the contract purchasers were owners within the meaning of IC 32–8–3–1 and therefore had to be given written notice of the delivery of materials and the existence of lien rights within the fourteen (14) day period. The purchasers' interest in the land by virtue of the oral contract was found to be the kind of interest upon which a mechanic's lien could be imposed. Justice Prentice elaborated on the definition of the term "owner" as follows:

> "We hold that the 'owner' entitled to notice, under the provision of the statute under consideration, is the owner of that interest which may be subjected to the lien anticipated by the notice, in this case the defendants. Hence, absent equitable considerations estopping such persons from denying notice, those seeking the benefits of the lien may not rely upon the public records but are enjoined, at their peril, to give notice to such owner. This will preclude blind reliance upon a search of the record title. * * * " (Citations omitted) *Mid America Homes, Inc. v. Horn, supra,* p. 883.

Although *Mid America Homes, supra,* dealt with the portion of IC 32–8–3–1 concerning "the original construction of a single or double family dwelling," we find that the ownership concept as expressed in that case is applicable in the case at bar. In *Mid America Homes, supra,* the supplier did give notice to the record title holder, whereas in the case before us no such notice was given. Even notification of the record title holder, however, was deemed insufficient. Furthermore, it is no more burdensome to require a supplier to determine who is the relevant "owner" where there is an unrecorded *written* land sale contract extant than where the land sale contract is oral.

However, the case at bar involves the definition of the term "owner-occupied" as found in the third paragraph of IC 32–8–3–1, which imposes an additional requirement upon suppliers of material or services in the repair of "any owner-occupied single or double family dwelling or the appurtenances or additions thereto," whereby such supplier must give a written notice to the "occupying owner" within five (5) days of the delivery or work of the existence of lien rights, as a condition precedent to the right to acquire a lien.

Having determined heretofore that Robert and Janet Barker were "owners" of the single family dwelling in question, we must next determine if the said residence was "owner-occupied." If the residence was "owner-occupied" by Robert and Janet Barker, Brownsburg, as a condition precedent to acquiring a mechanic's lien on the real estate, was required to give the five (5) day notice to Robert and Janet.

In determining the meaning of "owner-occupied" and "occupying owner" as those terms are used on IC 32–8–3–1, we must consider the legislative purpose in enacting the provision in question. In the case of *Wiggin v. Gee Co.,* (1979) Ind.App., 386 N.E.2d 1218, at p. 1219, decided by the

---

tion precedent to the right of acquiring a lien upon such real estate or upon the improvement constructed thereon."

The fourteen (14) day limit has been extended to sixty (60) days. Now *see* IC 1971, 32–8–3–1 (Burns Code Ed., Supp.1979).

Third District of this court, Judge Staton wrote:

> " * * * it is clear that the statute's use of the phrase 'owner occupied . . family dwelling' that its intent is to regulate liens on *private domestic residences.* * * * " (Our emphasis)

Judge Staton stated further in considering the purpose and rationale of this statute, at p. 1220:

> " * * * The effect of this rule is to place private homeowners in a protected category apart from others, such as entrepreneurs, who may also be subject to mechanic's liens."

■ From the foregoing quotations from *Wiggin v. Gee Co., supra,* we believe it to be clear that by the provision in the third paragraph of IC 32–8–3–1, the legislature intended to afford a greater protection from mechanic's liens to owners of private residences than to owners of rental dwellings or other commercial, business or income producing real estate. Accordingly, we hold that the term "owner-occupied . . . family dwelling" means the private residence of the owner as distinguished from a residence owned and held for renting to tenant-occupants.

The trial court found that Robert A. Barker and Janet S. Barker were not in actual possession of the real estate at any time during which Brownsburg supplied materials, and that neither Roland nor H. Eugene Barker ever occupied the premises at any time relevant to *this* case. Based upon such findings, the trial court concluded in its conclusion of law number 7 that the improvements were not owner-occupied in that Roland and Eugene Barker were the titled owners and that Robert and Janet Barker had no ownership interest in the property that was properly recorded. The court further concluded that Brownsburg had properly perfected its lien.

■ For the reasons which we have previously stated, based upon the decision of our Supreme Court in the *Mid America Homes* case, we hold that Robert and Janet Barker were "owners," and that Brownsburg could not rest upon a record search as to the identity of the record title holders alone. Further, we hold that the real estate in question was "owner-occupied" by Robert and Janet Barker for the evidence shows that they lived in the house under their contract of purchase prior to the fire, temporarily left while the fire damage was being repaired, and returned to reside in the house upon completion of repairs.

We are not unmindful of the fact that the only reported case we have been able to find interpreting a similar statute reached an opposite conclusion. In the case of *Smith v. Magruder,* (Ky.App.1978) 566 S.W.2d 430, the house was rendered uninhabitable by a tornado. The owner rented an apartment where she lived during the reconstruction of her home. The contractor did not give the notice required by Kentucky statute (KRS 376.010(4)) to be given to the owner of an "owner-occupied single or double family dwelling." The Court of Appeals of Kentucky held that an owner of an uninhabitable parcel of real estate is not an owner-occupant within the meaning of the Kentucky statute. That court said:

> "A clear and simple meaning of the word occupant is one who occupies or has the actual use or possession of a thing, as distinguished from constructive possession. * * * " *Smith v. Magruder, supra,* p. 431.

The Kentucky court rejected the argument that the statute was intended for the protection of small home owners. We believe that the Indiana statute was designed for that very purpose as is evidenced by the foregoing quotation from Judge Staton's opinion in *Wiggin v. Gee Co., supra.*

Also, we think that the Kentucky case is distinguishable on the basis of its rationale. In *Smith v. Magruder, supra,* at p. 431, the court said:

> "It has been the policy of Kentucky law to construe mechanic's lien laws liberally in favor of the lienors. * * * "

However, the policy of Indiana law is to construe mechanic's lien laws strictly. *Mid America Homes, Inc. v. Horn, supra; Puritan Engineering Corporation v. Robinson et al.,* (1934) 207 Ind. 58, 191 N.E. 141.

It is true that fire insurance cases in construing policy provisions relating to the insured buildings' being "vacant" or "unoccupied" have adopted a narrow interpretation of those terms. *Homes Ins. Co. v. Boyd,* (1898) 19 Ind.App. 173, 49 N.E. 285; *Continental Ins. Co. of New York City v. Kyle,* (1890) 124 Ind. 132, 24 N.E. 727; annotation 47 A.L.R.3d 398 *et seq.* The reason for the narrow interpretation in the fire insurance cases is that vacancy or lack of occupancy, even for a short period of time, can significantly increase the risk of loss. No such reason exists in this case. We do not believe the fire insurance cases' definitions of occupancy are binding upon us in defining "owner-occupied" as used in the mechanic's lien statute.

Therefore, we hold that an owner-occupied single or double family dwelling does not lose its status as such when the owner-occupant removes himself and his family from the dwelling temporarily in order that substantial repairs may be made to the dwelling, with the intention of resuming residency in the dwelling upon the completion of the repairs. Accordingly, we hold that Robert and Janet Barker were owner-occupants of the single family dwelling in question and remained such during the time they were temporarily living elsewhere while the repairs were being made, and that as such owner-occupants, they were entitled to the five (5) day notice of lien rights.

Consequently, the trial court committed reversible error in holding that Brownsburg gave proper notice and that it was therefore entitled to foreclose on its alleged mechanic's lien. However, we find that there was a genuine issue of material fact regarding whether there was an owner-occupant, so denial of Roland and Eugene Barker's motion for summary judgment was not error.

Because of our resolution of Issues One through Five, we need not decide Issue Six (sufficiency of the evidence of delivery and use of the materials) or Issues Seven and Eight (attorney's fees).

We reverse and order the trial court to enter judgment in favor of Roland L. Barker and H. Eugene Barker.

ROBERTSON, P. J., and NEAL, J., concur.